Edward M. ATCHISON, Plaintiff,

v.

W. Don NELSON, Individually, Wyoming Career Service Council, State of Wyoming, Department of Administration and Fiscal Control, Department of Health and Social Services, Director of Department of Administration and Fiscal Control, Director of Health and Social Services, Personnel Management State Administrator, Selections Supervisor, Pete J. Kithas, Kirk Coulter, Nelda Skidmore, Dan Sherwood, Richard Hodapp, and Jack Feldhaus, Individually, Defendants.

No. C78–135B.

United States District Court,
D. Wyoming.

Nov. 17, 1978.

Bert T. Ahlstrom, Jr., Cheyenne, Wyo., and James Rollin Miller and Thomas E. Root, Denver, Colo., for plaintiff.

Kenneth G. Vines, Asst. Atty. Gen., Cheyenne, Wyo., and Michael Schilling, Asst. Atty. Gen., for defendants W. Don Nelson, Wyoming Career Service Council, State of Wyoming, Department of Administration and Fiscal Control, Department of Health and Social Services, Director of Department of Administration and Fiscal Control, Director of Health and Social Services, Personnel Management, State Administrator, Selections Supervisor, Pete J. Kithas, Kirk Coulter, Nelda Skidmore, Dan Sherwood, Richard Hodapp and Jack Feldhaus.

John B. Speight, Cheyenne, Wyo., appearing for defendant W. Don Nelson.

## ORDER GRANTING MOTION TO DISMISS

BRIMMER, District Judge.

The Plaintiff Edward M. Atchison initiated this civil rights action contending that in November, 1977, he was hired by the Wyoming Department of Health and Social Services to serve as a Developmental Disabilities State Program Consultant. The complaint alleges that in early 1978 the Department of Administration and Fiscal Control reclassified the Plaintiff's existing job, but that he was assured of continued employment if he met the minimum requirements for the new position. Mr. Atchison was subsequently notified that he did not meet the minimum standard qualifications and would be required to terminate his employment within thirty (30) days. The termination was to be treated as a reduction in work force. The Plaintiff thereafter pursued his administrative remedies by filing a Petition for Review with the Career Service Council, which dismissed his appeal on June 26, 1978. Prior to the dismissal of his Petition for Review, the Plaintiff was advised that he was being fired as a probationary employee rather than being terminated in a reduction of work force.

The Plaintiff asserts that the Defendants in their individual and official capacities conspired to design his job classification so that he could not meet its requirement standards and that they further conspired to terminate the Plaintiff's employment for cause in order that he could not successfully complete his appeal. Mr. Atchison contends that he was not fired either for cause or for failure to qualify for the reclassified position, but rather he was terminated to frustrate and silence his political and union activities as well as his opposition to the administration of the incumbent governor of Wyoming.

This action was therefore brought against the Defendants seeking job reinstatement with full back pay, and actual and punitive damages in the amount of two million dollars. The Plaintiff also requests that the Defendants be enjoined from any further abridgment of his civil rights.

The Defendants, consisting of the State of Wyoming, the Wyoming Career Service Council, the Department of Administration and Fiscal Control, the Department of Health and Social Services, the supervisors of those agencies and various other individual defendants, have moved to dismiss the Plaintiff's complaint. Three grounds are urged in support of the motion. First, the Defendants assert that the Plaintiff's claims are barred by sovereign immunity and the Eleventh Amendment. Second, the complaint fails to state a claim as to the State and its agencies since they are not "persons" within the meaning of 42 U.S.C. § 1983. Finally, the Defendants contend that this Court should invoke the doctrine of judicial abstention.

■ The Eleventh Amendment of the United States Constitution provides:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

This provision clearly prohibits suits against a state by citizens of another state and the Supreme Court has also construed the amendment to bar suits against the state by its own citizens. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

■ A state's immunity under the Eleventh Amendment may be waived, *Gallagher v. Continental Insurance Co.*, 502 F.2d 827 (10th Cir. 1974), but a waiver of immunity or consent to be sued will not be implied easily. There must be a clear intent of waiver to subject the state to suit in federal court. *Williams v. Eaton*, 443 F.2d 422 (10th Cir. 1971). In the instant case there is nothing whatsoever to indicate that the State of Wyoming has consented to be sued or has waived its immunity and the Plaintiff does not appear to contend that it has.

■ The Eleventh Amendment also extends to agencies which are arms or alter egos of the state. 13 Wright & Miller *Federal Practice and Procedure*, § 3324. In *Brennan v. University of Kansas*, 451 F.2d 1287, 1290 (10th Cir. 1971), the Court addressed this issue by stating:

There is no question that a state agency, functioning as an arm, an alter ego of the state, cannot be sued in federal court because of the prohibition of such suits by the Eleventh Amendment. Determination of the status of the agency in question is by reference to the applicable state law.

It is readily apparent from the applicable statutes that the Wyoming Career Service Council, the Department of Health and Social Services and the Department of Administration and Fiscal Control are nothing less than extensions of the state and any award against them would unquestionably be satisfied out of the state treasury. Wyoming Statutes §§ 9-3-101, 9-3-201, 9-3-2004 (1977). Neither have these agencies waived their Eleventh Amendment immunity nor consented to suit, Wyoming Statutes § 1-35-101 (1977).

■ The Defendants also contend that the Eleventh Amendment bars suit against the individual defendants. When an action

is in essence to receive money from the state, immunity is available even though individual officials are nominal defendants. *Edelman v. Jordan, supra,* 415 U.S. at 464, 94 S.Ct. 1347, *Williams v. Eaton, supra* at 429. However, when a plaintiff alleges facts that demonstrate that he is seeking to impose personal and individual liability on the named defendants then money damages are proper. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). It is obvious from the pleadings in this case that at least some individual defendants are complained against personally. Thus, dismissal of the damage claims as to any of those defendants at this stage of the proceeding would be inappropriate.

■ The immunity conferred on state agencies and individuals does not, however, extend so far as to prevent injunctive or declaratory relief. *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *Williams v. Eaton, supra* at 429. The Court in *Young* recognized that when a state officer acts in a manner which violates the Constitution, he:

"comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." 209 U.S., *supra* at 159–160, 28 S.Ct. at 454.

The Plaintiff asserts in opposition to the Defendants' claim of immunity that the Supreme Court's recent decision in *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) destroys the Eleventh Amendment privilege in 42 U.S.C. § 1983 actions. We disagree. *Fitzpatrick, supra,* concerns an action under Title VII of the Civil Rights Act of 1964. The Court held that the Eleventh Amendment must give way to the enforcement provisions of Section 5 of the Fourteenth Amendment under which the Civil Rights Act of 1964 was promulgated. Therefore, the Eleventh Amendment is not a defense to such ac-

tions. The Supreme Court's holding did not overrule *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), which involved a class action for injunctive and declaratory relief against Illinois officials who administered the federal-state programs of aid to aged, blind and disabled. Plaintiffs in that case contended that the Defendants were violating federal law and denying equal protection of the law by following state regulation which did not comply with federal time limits for processing and making grants to applicants for the benefits. The Court ruled that while the Eleventh Amendment may not prohibit prospective injunctive relief it would not permit a suit which seeks an award of accrued monetary liability. The Court stated:

Though a § 1983 action may be instituted by public aid recipients such as respondent, a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief, . . . and may not include a retroactive award which requires the payment of funds from the state treasury. (415 U.S. *supra* at 677, 94 S.Ct. at 1362.)

The primary difference between *Fitzpatrick* and *Edelman* is the nature of the cause of action involved. *Fitzpatrick* concerned a Title VII suit while *Edelman* and the case at bar do not. The 42 U.S.C. § 1983 decisions since *Fitzpatrick* do not appear to recognize an abrogation of the Eleventh Amendment. *Nadeau v. Helgemoe,* 561 F.2d 411 (1st Cir. 1977); *MacBride v. Exon,* 558 F.2d 443 (8th Cir. 1977).

It is therefore the opinion of the Court that the State of Wyoming should not be a party to this action and that the claim for monetary damages against the State agencies are improper.

■ The Defendants also assert that the state agencies should be dismissed since they are not "persons" within the meaning of 42 U.S.C. § 1983. In *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) the Supreme Court held that upon reexamination of the legislative history of

the Civil Rights Act of 1871, which is now codified as 42 U.S.C. § 1983, local governing bodies were intended to be included among "persons" to which § 1983 applies. It would be incongruous, as the Plaintiff suggests, to find that municipalities are "persons" under § 1983 but that state agencies are not, and this Court shall not so hold.

 In any event, we must conclude that regardless of which defendants are ultimately deemed to be properly joined in this action, any decision that the Court renders on the merits of the case must be temporarily deferred. The Plaintiff, simultaneously with the filing of this action, brought suit in Wyoming State Court alleging six causes of action which include: (1) a petition for review of administrative action of the Career Service Council; (2) breach of contract; (3) intentional interference with a contract; (4) violation of the Wyoming Constitution; (5) outrageous conduct; and (6) libel. A review of the state and federal complaints discloses that the parties and the factual allegations are identical, the relief prayed for is similar and the same central issue is presented in both cases, namely whether the Plaintiff was properly terminated or whether he was fired for his political and union activities, and to prevent his right of appeal.

Abstention from the exercise of federal jurisdiction is the exception, not the rule. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). "Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *County of Allegheny v. Frank Maschuda Co.*, 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959). Abstention is appropriate where difficult questions of state law are in issue which bear on policy problems of substantial public import or if exercise of federal jurisdiction would be disruptive of state efforts to establish a coherent policy with respect to matters of public concern. For example, in *Burford v.*

*Sun Oil*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the Supreme Court held that a suit seeking review of an order of the Texas Railroad Commission granting the right to drill oil wells should have been dismissed by the District Court. The Court was of the opinion that where the state had established its own review system for dealing with the geological complexities of oil and gas fields, intervention by a lower federal court would have a disruptive effect on state policy for the management of the fields, and result in conflicts in the interpretation of state law. *Alabama Public Service Commission v. Southern Railroad Co.*, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951) involved a case in which the railroad brought an action in federal court for injunctive relief against the state commission, which had denied the plaintiff's request to discontinue certain unprofitable passenger train service. Unlike *Burford, Alabama Public Service* did not involve an established system for the formulation of state policy in a complex industry, nor was there a history of confusion arising from federal review of administrative orders. The Court nevertheless ordered dismissal of the case, stating:

"As adequate state court review of an administrative order based upon predominantly local factors is available to appellee, intervention of a federal court is not necessary for the protection of federal rights. Equitable relief may be granted only when the District Court, in its sound discretion exercised with the 'scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts,' is convinced that the asserted federal right cannot be preserved except by granting the 'extraordinary relief of an injunction in the federal courts.' Considering that '(f)ew public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies,' the usual rule of comity must govern the exercise of equitable jurisdiction by the District Court in this case. Whatever rights appellee may have

are to be pursued through the state courts."

341 U.S. at 349–350, 71 S.Ct. at 768.

See also, *Kelly Services v. Johnson*, 542 F.2d 31 (7th Cir. 1976). 1A Moores Federal Practice § 0.203[2].

The concerns voiced in *Alabama Public Service* are magnified when there is a state proceeding pending dealing with the identical issue presented in the federal court. A number of decisions have held that a federal tribunal should stay or dismiss an action before it in view of concurrent state lawsuit. The mere fact that a state action is pending is not enough, however, to justify dismissal. There must be some significant factors present which warrant the federal court's refusal to exercise jurisdiction. The Supreme Court approved dismissal in *Colorado River Water Construction District, supra*, in light of a concurrent state court suit and a federal policy of avoiding piecemeal litigation of water rights in a river system. Similar approval of a stay or dismissal have been evidenced by the circuit courts when there is a pending state matter. *Commerce Oil Refining Corp. v. Miner*, 303 F.2d 125 (1st Cir. 1962); *Clarkson Co., Ltd. v. Shaheen*, 544 F.2d 624 (2nd Cir. 1976); *Joffe v. Joffe*, 384 F.2d 63 (3rd Cir. 1967); *Amdur v. Lizars*, 372 F.2d 103 (4th Cir. 1967); *PPG Industries Inc. v. Continental Oil Co.*, 478 F.2d 674 (5th Cir. 1973); *Hickock v. Gulf Oil Corp.*, 265 F.2d 798 (6th Cir. 1959); *Aetna State Bank v. Altheimer*, 430 F.2d 750 (7th Cir. 1970); *Applegate v. Devitt*, 509 F.2d 109 (8th Cir. 1975); *Weiner v. Shearson, Hammill & Co., Inc.*, 521 F.2d 817 (9th Cir. 1975); *Steele v. Bunten*, unpublished 77–2033 (10th Cir. 1978).

We are well aware that the remedies provided under § 1983 are supplementary to state remedies and should be held in the utmost regard by the federal courts. *Gillette v. McNichols*, 517 F.2d 888 (10th Cir. 1975). This Court is of the opinion, however, that based on all of the foregoing authority this matter should be dismissed. The case at bar, like the state action, essentially arises out of administrative processes of the state in dealing with the termination of one of its employees. The Plaintiff has apparently attempted to fully pursue and exhaust those remedies before petitioning the state court for review or filing this action. Thus, the state and federal courts are presented with an important question of state law and procedure pertaining to whether the state, its agencies or employees have implemented and exercised fair and reasonable personnel practices. Any decision by this Court, prior to resolution of the state action, may have the effect of interfering with the continuity of the state administrative review processes. The Plaintiff's attempt to seek relief through exhaustion of his administrative remedies was ongoing sometime prior to the commencement of this case. No gainful purpose can be achieved by disrupting this procedure, which should properly continue in the state proceeding. Our intervention at this point would only serve to create needless friction between state and federal relations. The Supreme Court in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 recognized that this potential conflict should not be regarded lightly:

"The notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. This, perhaps for lack of a better and clearer way to describe it, is referred to by many as "Our Federalism," and one familiar with the profound debates that ushered our Federal Constitution into existence is bound to respect those who remain loyal to the ideals and dreams of "Our Federalism." The concept does not mean blind deference to "States' Rights" any more than it means centralization of control over every important issue in our National Government and its courts. The Framers rejected both these courses. What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and Na-

tional Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will unduly interfere with the legitimate activities of the States. It should never be forgotten that this slogan, "Our Federalism," born in the early struggling days of our Union of States, occupies a highly important place in our Nation's history and its future."

A state's interest in dealing with the propriety of a termination of one of its own employees and the continuity of that process should be deemed of paramount importance.

Dismissal would also appear appropriate in light of the concern for economy of judicial time and avoidance of duplicative litigation. *PPG Industries Inc. v. Continental Oil Co., supra.* The dockets of the federal courts have become increasingly more crowded, and the undesirability of imposing upon litigants and witnesses the burden of two trials is obvious. The Court would also note that where federal and state tribunals are simultaneously engaged in the disposition of cases which present identical issues for determination the general public as taxpayers are done a disservice. This is not to imply that the Plaintiff should be deprived of his § 1983 remedy, but rather where important state administrative processes have not reached their conclusion, and the matter is presently before the state court for review and disposition of the resulting tort claims, principles of comity and judicial economy require this Court to postpone any decision which it may reach on the identical issues raised in the pending state adjudication. In sum, we adhere to the pronouncements made in the recent Tenth Circuit case of *Steele v. Bunten, supra,* wherein the Court stated:

> . . . where a state court action is pending in which all of the issues in controversy are presented and can be effectively adjudicated, as here, the federal court may abstain. Principals of equity, comity, and federalism come into play

when the same parties plaintiffs attempt to invoke the jurisdiction of the federal courts in the identical controversy previously filed and pending in the state court
. . .

*Id.* at 11.

IT IS THEREFORE ORDERED that the Defendants' motion to dismiss be and the same hereby is granted and the Plaintiff's Complaint is dismissed without prejudice.