No. 53,610

Ashok K. Gumbhir, *Appellant,* v. Kansas State Board of Phar-
macy, *Appellee.*

(646 P.2d 1078)

Opinion filed
June 11, 1982.

*J. Nick Badgerow,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City,
argued the cause and was on the brief for the appellant.

*Robert E. Davis,* of Davis, Davis, McGuire & Thompson, Chartered, of Leav-

enworth, argued the cause and *John F. Thompson,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is an action for attorney fees under authority of 42 U.S.C. § 1988, growing out of this court's previous opinion in *Gumbhir v. Kansas State Board of Pharmacy,* 228 Kan. 579, 618 P.2d 837 (1980).

Ashok K. Gumbhir received a bachelor's degree in pharmacy from Punjab University in Chandrigarh, India. Later he immigrated to the United States where he now resides. After moving to this country, Gumbhir earned a masters degree in pharmacy from the University of Minnesota. He subsequently obtained his Ph.D in pharmacy administration from Ohio State University and was registered as a pharmacist in Ohio. Appellant made application for such registration in Kansas. His application was denied by the Kansas State Board of Pharmacy. He appealed the Board's ruling to the district court, alleging K.S.A. 1979 Supp. 65-1631(*a*), the registration statute, was unconstitutional on the following grounds:

"(a) The statute contains an impermissible, unconstitutional and undue delegation of authority to some private body or entity other than the Kansas State Board of Pharmacy, and does not require nor permit defendant to exercise its own judgment;

"(b) the statute is violative of the Commerce Clause, Art. 1, § 8 of the Constitution of the United States;

"(c) because the American Council on Pharmaceutical Education does not accredit nor approve colleges or universities other than those in the United States of America, the statute is discriminatory and violative of the First, Fifth and Fourteenth Amendments of the Constitution of the United States, and is an improper delegation of authority;

"(d) the statute is unconstitutionally vague, ambiguous and susceptible of various interpretations."

The district court upheld the Board's decision, but on appeal the Supreme Court reversed. This court held K.S.A. 1979 Supp. 65-1631(*a*) was violative of the Kansas Constitution, Article 2, § 1, in that it resulted in an unconstitutional delegation of legislative authority to a nongovernmental agency. Thus, the court found it unnecessary to reach the other constitutional issues raised by appellant. *Gumbhir v. Kansas State Board of Pharmacy,* 228 Kan. at 588. In light of this decision Dr. Gumbhir became registered as a pharmacist in Kansas on February 8, 1981.

In April of 1981, Dr. Gumbhir filed a "Motion for Assessment

of Costs," requesting that the district court assess all costs and attorney fees incurred in this matter against the appellee pursuant to the authority of 42 U.S.C. § 1988, the Civil Rights Attorney's Fees Awards Act. The district court denied the motion and Dr. Gumbhir has appealed.

The sole issue on this appeal is whether the district court erred in denying appellant's request for attorney fees under the provisions of 42 U.S.C. § 1988.

First let us examine the provisions of 42 U.S.C. § 1988 (Supp. IV 1980), which provide in pertinent part:

"In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, [20 U.S.C. 1681 et seq.] or title VI of the Civil Rights Act of 1964, [42 U.S.C. 2000d et seq.] the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

Appellant claims his original action qualifies as one "to enforce a provision of § 1983." 42 U.S.C. § 1983 (Supp. IV 1980), provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

As a preliminary matter, the propriety of state courts enforcing federal civil rights statutes should be examined. In *Martinez v. California*, 444 U.S. 277, 62 L.Ed.2d 481, 100 S.Ct. 553 (1980), the court held actions under 42 U.S.C. § 1983 may be brought in state courts. Similarly, in *Maine v. Thiboutot*, 448 U.S. 1, 65 L.Ed.2d 555, 100 S.Ct. 2502 (1980), the court applied § 1988 to a civil rights action brought in state court. Thus, it is apparent federal civil rights statutes are enforceable by state courts.

In considering the full import of this case it is necessary to bear in mind the history and purpose of the Civil Rights Attorney's Fees Awards Act. It was signed into law October 19, 1976, by President Gerald Ford for the purpose of rescuing more than a decade of judicial decision-making which had, prior to May 12, 1975, made attorney fees available in most public interest cases. Prior to the late 1960's the practice of allowing attorney fees as a

part of the costs in public interest litigation was virtually unheard of. Civil rights plaintiffs were required to obtain counsel pro bono publico; to pay from their own pockets for litigating cases usually resulting in injunctive relief of value to large numbers of people with no damages from which a fee could be extracted; or to forget the rights existed because enforcement was too expensive. Civil rights were luxuries, not rights.

The situation changed in 1964. The Comprehensive Civil Rights Act passed. It provided for fee shifting upon proof of discrimination in public accommodations and employment. Realizing the federal government would be unable to handle all the cases involving this type of discrimination, the right to bring private enforcement actions was included in the act. It also provided for attorney fees as a vehicle for private enforcement because the beneficiaries generally lack the means to bring private suits.

The Supreme Court in *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 19 L.Ed.2d 1263, 88 S.Ct. 964 (1968), expanded the legislative scheme by ruling even though Congress had made fee awards in discrimination cases in public accommodations technically "discretionary," it would be a rare case in which fees would not be automatic. The court reasoned plaintiffs in such cases were "private attorneys general," and it would be unfair to tax such plaintiffs with the cost of doing the work benefiting the whole country. See *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 45 L.Ed.2d 280, 95 S.Ct. 2362 (1975); *Jeanty v. McKey & Poague, Inc.,* 496 F.2d 1119 (7th Cir. 1974); *Northcross v. Memphis Board of Education,* 412 U.S. 427, 37 L.Ed.2d 48, 93 S.Ct. 2201 (1973). In 1970, the Supreme Court again expanded the concept of fee shifting in *Mills v. Electric Auto-Lite,* 396 U.S. 375, 24 L.Ed.2d 593, 90 S.Ct. 616 (1970), where the plaintiff proved the use of misleading proxy statements. Because plaintiffs had benefited the corporation, shareholders and general public by disclosing the corporation's lawlessness, the court reasoned it would be unfair for plaintiffs to bear the cost of the litigation. Following the foregoing cases, lower courts began to award fees in cases of all kinds, reasoning that whenever a private citizen sues to prevent a violation of the law, and thus provides the benefit of therapeutic enforcement for others as well as himself, he should not have to pay.

Attorney fee awards became increasingly common in suits involving school desegregation, jury discrimination, teacher dismissal, first amendment violations, unreasonable searches, legislative redistricting, prisoners' rights, union matters, police harassment and consumer and environmental problems. Congress kept pace with the courts by making fees virtually automatic in certain areas of public interest law, among them school desegregation, voting rights, and certain types of consumer and environmental litigation.

The recognition of the concept of "private attorneys general" by the Congress and the courts had a salient impact on public interest law. Public interest law firms as well as major firms began to recognize there was a new area of lucrative practice. Fee awards made civil rights law a financially viable practice.

However, in 1975, in *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 44 L.Ed.2d 141, 95 S.Ct. 1612 (1975), the U.S. Supreme Court reversed the trend, holding the private attorney general rationale was applicable to public interest litigation only when specifically authorized by Congress. *Alyeska* was a drastic remedy for a practice the court apparently reasoned was getting out of hand. It held 28 U.S.C. § 1923 (1970) deprived courts of the equitable power to award fees in private attorney general cases, notwithstanding an unbroken line of cases since 1881 holding courts possess such equitable powers where necessary to obtain justice.

As a direct result of *Alyeska,* Congress passed the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988 (1976). In *Alyeska* the court abolished fee shifting under the "private attorney general" theory absent statutory authority. Section 1988 provided the statutory authority for the rationale and strengthened it by removing the uncertainty which characterized the theory before *Alyeska.* From the legislative history we must conclude that in order to achieve this congressional purpose to encourage compliance with and enforcement of civil rights laws, section 1988 should be construed liberally in favor of litigants who prevail in actions under 42 U.S.C. § 1983. *Collins v. Chandler Unified School Dist.,* 644 F.2d 759 (9th Cir. 1981); *Dennis v. Chang,* 611 F.2d 1302 (9th Cir. 1980).

For Dr. Gumbhir to prevail in his efforts to apply § 1988 to his action, he must first demonstrate his action was brought to en-

force a provision of § 1983. Initially, let us examine the issue of whether the Kansas State Board of Pharmacy is considered a "person" under § 1983. Prior to 1977, the courts were almost unanimous in holding state agencies were not "persons" under § 1983. See, *e.g., Edelberg v. Illinois Racing Bd.,* 540 F.2d 279 (7th Cir. 1976); *Cheramie v. Tucker,* 493 F.2d 586 (5th Cir. 1974), *cert. denied* 419 U.S. 868 (1974); *Allison v. California Adult Authority,* 419 F.2d 822 (9th Cir. 1969). However, in 1978 the court changed the rule with its decision in *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 56 L.Ed.2d 611, 98 S.Ct. 2018 (1978), where it stated: "municipalities and other local government[s] [are] to be included among those persons to whom § 1983 applies." 436 U.S. at 690. *Monell* softened the old notion a state agency was not a person within the meaning of § 1983. Since then the courts are divided on the question. Some limit *Monell* to its facts, applying a literal translation that a state and its agencies are not "persons." See *Florida Businessmen, Etc. v. State of Fla.,* 499 F. Supp. 346 (N.D. Fla. 1980); *Clark v. People of State of Mich.,* 498 F. Supp. 159 (E.D. Mich. 1980). Others have merely denied suit, holding the *Monell* decision did nothing to abrogate the states' traditional immunity. See *Ginter v. State Bar of Nevada,* 625 F.2d 829 (9th Cir. 1980); *Burkey v. Marshall Cty. Bd. of Ed.,* 513 F. Supp. 1084 (N.D. W.Va. 1981); *Holladay v. State of Mont.,* 506 F. Supp. 1317 (D. Mont. 1981). However, even if the state or its agencies are considered a "person" after *Monell,* it has been held they are still immune from § 1983 suits under the 11th Amendment to the U.S. Constitution. See, *e.g., Zentgraf v. Texas A & M University,* 492 F.Supp. 265 (S.D. Tex. 1980). This theory was advanced by the U.S. Supreme Court in *Quern v. Jordan,* 440 U.S. 332, 59 L.Ed.2d 358, 99 S.Ct. 1139 (1979). Although it did not specifically state the term "person" did not include "state," *Quern* held Congress, in enacting § 1983, did not intend to abrogate the 11th Amendment immunity and thereby force the states to answer in federal court for punitive constitutional violations. In spite of the Supreme Court's careful avoidance of the issue, some courts have read into *Quern* a prohibition on states ever being "persons" under § 1983. See *State v. Green,* 633 P.2d 1381 (Alaska 1981); *Boldt v. State,* 101 Wis.2d 566, 305 N.W.2d 133 (1981); *Edgar v. State,* 92 Wash. 2d 217, 595 P.2d 534 (1979), *cert. denied* 444 U.S. 1077 (1980).

On the other hand, other post-*Monell* decisions have permitted § 1983 actions against a state and its agencies. Some find it inconsistent to hold municipalities are "persons" while state agencies are not. See, *e.g., Atchison v. Nelson,* 460 F. Supp. 1102 (D. Wyo. 1978). In *Marrapese v. State of R. I.,* 500 F. Supp. 1207 (D. R.I. 1980), it was held a state can be a "person" under the broad scope of § 1983 if it waives its 11th Amendment immunity. Other cases have attempted to limit the *Quern* holding. For example, in *Hodges v. Tomberlin,* 510 F. Supp. 1280 (S.D. Ga. 1980), the court implied that if the claim for relief was injunctive rather than monetary, the state and its agencies would be considered "persons" under § 1983. In *Thompson v. State of N.Y.,* 487 F. Supp. 212 (N.D. N.Y. 1979), it was suggested the *Quern* analysis was wrong and § 1983 was intended to override state immunity under the 11th Amendment. Finally, in *Morrow v. Sudler,* 502 F. Supp. 1200 (D. Colo. 1980), the court held the Colorado Historical Society, a state agency, was a person under § 1983.

We think the sounder view in a case such as this, where prospective injunctive relief is sought, is that a state agency should be considered a "person" under the statute. Most of the cases denying suit against the state or its agencies under § 1983 have done so under the 11th Amendment, which prohibits suits against the states in federal court absent consent. The 11th Amendment is not applicable to this case since the action was brought in state court. Further, a careful reading of *Quern* reveals that case did not hold states or state agencies could never be considered "persons" under § 1983. In fact, Justice Rehnquist's majority opinion carefully skirted the issue. We conclude under the facts of this case the Kansas State Board of Pharmacy is a "person" as contemplated in § 1983.

Once suit is allowed against the state, attorney fees can be properly awarded out of state funds. *Hutto v. Finney,* 437 U.S. 678, 57 L.Ed.2d 522, 98 S.Ct. 2565 (1978), *reh. denied* 439 U.S. 1122 (1979).

Appellee next argues two procedural defects require this court to deny appellant's motion. First, it is contended a plaintiff must specifically allege a violation of § 1983 to obtain attorney fees under § 1988. Here, Dr. Gumbhir alleged the appellee's denial of his application violated his rights under the 1st, 5th, and 14th

Amendments and Article 1, § 8 of the U.S. Constitution. § 1983 was never mentioned. Several courts have confronted this issue.

In *Harradine v. Supervisors,* 73 App. Div. 2d 118, 425 N.Y.S.2d 182 (1980), the court allowed recovery of attorney fees even though a violation of § 1983 had not been specifically alleged, stating:

"In view of the number of apportionment cases brought in Federal court pursuant to section 1983, the similarity in language of section 1983 and section 1 of article 1 of the New York State Constitution, the policy behind section 1988 which is to encourage the private citizen to take action as a 'private attorney general', and the fact this action is premised upon a constitutional claim, we conclude that attorney's fees may be recovered in this context pursuant to section 1988 in a State court. Plaintiff's cause of action is embraced within the spirit of section 1983 . . . ." p. 126.

The Alaska Supreme Court has also examined the problem. In *Fairbanks Correctional Center v. Williamson,* 600 P.2d 743 (Alaska 1979), the sole mention of § 1983 was in parenthesis in the title of the complaint. Nevertheless, the court held § 1988 applied, stating that a combination of "the broad purposes of 42 U.S.C. § 1983—to provide a cause of action upon allegations of facts constituting deprivation under color of state authority of federal constitutional rights with the liberal pleading provisions of Alaska Rule of Civil Procedure 8" allowed the complaint to state a cause of action under § 1983. 600 P.2d at 747.

The Wisconsin Supreme Court in *Boldt,* 101 Wis. 2d at 584, held a complaint alleging "a violation of the due process clauses of the Wisconsin and United States Constitutions," was sufficient to state a cause of action under § 1983 because of that statute's reference to "the deprivation of any rights, privileges, or immunities secured by the Constitution."

Based on the foregoing decisions and Kansas' liberal rules of notice pleading (K.S.A. 60-102), we hold appellant has adequately pleaded a violation of his civil rights under § 1983 to maintain a suit for attorney fees under § 1988, even though the better practice is to specifically plead a violation of § 1983.

It is also argued Gumbhir's request for attorney fees must be denied because he failed to plead 42 U.S.C. § 1988 in his original pleadings. In *White v. New Hampshire Dept. of Empl. Sec.,* 455 U.S. _____, 71 L.Ed.2d 325, 102 S.Ct. 1162 (1982), the U.S. Supreme Court spoke to this claim in a unanimous opinion. The issue in the case arose from a post-judgment request for an award

of attorney fees under § 1988 growing out of class action litigation where White claimed respondent failed to make timely determination of entitlements of unemployment compensation. His complaint did not request attorney fees. The trial court granted White's claim. Pending the appeal the parties settled the case by agreement. Four and one-half months after entry of final judgment White filed a motion for attorney fees. The trial court awarded the requested fees over objection of respondent who claimed surprise. The Court of Appeals reversed the trial court, holding petitioner's post-judgment motion for attorney fees constituted a motion to alter or amend a judgment and was governed by the ten-day time limit.

The case came to the Supreme Court in that condition. The court reversed the Court of Appeals, stating:

"Section 1988 provides for awards of attorney's fees only to a 'prevailing party.' Regardless of when attorney's fees are requested, the court's decision of entitlement to fees will therefore require an inquiry separate from the decision on the merits—an inquiry that cannot even commence until one party has 'prevailed.' Nor can attorney's fees fairly be characterized as an element of 'relief' indistinguishable from other elements. Unlike other judicial relief, the attorney's fees allowed under § 1988 are not compensation for the injury giving rise to an action. Their award is uniquely separable from the cause of action to be proved at trial.

. . . .

"Section 1988 authorizes the award of attorney's fees 'in [the] discretion' of the court. We believe that this discretion will support a denial of fees in cases in which a post-judgment motion unfairly surprises or prejudices the affected party. Moreover, the district courts remain free to adopt local rules establishing timeliness standards for the filing of claims for attorney's fees." p. _____.

We conclude Gumbhir's motion for attorney fees was timely filed. To avoid future confusion, however, we hereby adopt the rule that motions for attorney fees under 42 U.S.C. § 1988 must be filed no later than thirty days after the entry of final judgment, thus facilitating the determination of all issues in one appeal.

To obtain attorney fees under § 1988 the litigant must be the "prevailing party" in his action to enforce § 1983. Appellees argue Dr. Gumbhir is not a prevailing party because this court's decision was based solely on a Kansas constitutional issue.

In *Maher v. Gagne,* 448 U.S. 122, 65 L.Ed.2d 653, 100 S.Ct. 2570 (1980), plaintiff brought an action alleging Connecticut's Aid to Families with Dependent Children (AFDC) regulation violated the Social Security Act and the Equal Protection and Due Process Clauses of the 14th Amendment. Ultimately the case

was settled and the district court entered a consent decree. Defendant then challenged the award of attorney fees to plaintiff. The Supreme Court upheld the award stating:

"We also find no merit in petitioner's suggestion that respondent was not the 'prevailing party' within the meaning of § 1988. The fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees. Nothing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated. Moreover, the Senate Report expressly stated that 'for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief.' " 448 U.S. at 129.

Lower courts have fashioned more specific definitions of "prevailing party" for § 1988 purposes. In *Nadeau v. Helgemoe,* 581 F.2d 275, 279 (1st Cir. 1978), the court held plaintiffs can be considered prevailing parties if they succeed on any significant issue in litigation which achieves some benefit the parties sought in bringing suit, but the amount of the fees should be based only on work performed on issues in which they were successful. See also *Draper v. Town Clerk of Greenfield,* _____ Mass. _____, 425 N.E.2d 333 (1981). The Third Circuit Court of Appeals has stated the test of whether a person is a prevailing party is whether he "essentially succeeds in obtaining the relief he seeks in his claims on the merits." *Morrison v. Ayoob,* 627 F.2d 669, 671 (3rd Cir. 1980), *cert. denied* 449 U.S. 1102 (1981). In *Williams v. Alioto,* 625 F.2d 845, 847 (9th Cir. 1980), the 9th Circuit Court of Appeals held plaintiffs who had won a preliminary injunction were prevailing parties because they had "succeeded on a 'significant issue in litigation which achieve[d] . . . the benefit the parties sought in bringing suit.' *Sethy v. Alameda County Water District,* 602 F.2d 894, 897-98 (9th Cir. 1979), *cert. denied* 444 U.S. 1046 . . . (1980)."

Here Dr. Gumbhir succeeded in getting the State Board of Pharmacy to register him. That is precisely what he set out to do. Under any of the above theories he is clearly a "prevailing party" even though his victory was based on the merits of his state constitutional claim and not a § 1983 action. See *Seals v. Quarterly County Court, Etc.,* 562 F.2d 390 (6th Cir. 1977), where plaintiffs were awarded attorney fees when they prevailed only on their state law claim. There, however, the state claim involved a common nucleus of operative facts with a substantial federal

claim. We hold Gumbhir is a "prevailing party" for § 1988 purposes, subject to a showing his claim complied with the *Seals* rule, which will be discussed later.

Appellees argue in order to reverse the trial court's denial of attorney fees this court would have to find an abuse of discretion. Even though § 1988 states the award of attorney fees is within the sound discretion of the trial court, the legislative history and case law interpreting the act clearly indicate attorney fees are to be awarded to the prevailing plaintiff in § 1983 actions unless there are special circumstances making such award unjust. *Busche v. Burkee,* 649 F.2d 509 (7th Cir. 1981); *Johnson v. Nordstrom-Larpenteur Agcy., Inc.,* 623 F.2d 1279 (8th Cir.), *cert. denied* 449 U.S. 1042 (1980); *Love v. Mayor, City of Cheyenne, Wyo.,* 620 F.2d 235, 236 (10th Cir. 1980); *Miller v. City of Mission, Kan.,* 516 F. Supp. 1333, 1338 (D. Kan. 1981). Of special significance to the instant case is *Riddell v. National Democratic Party,* 624 F.2d 539, 545 (5th Cir. 1980), where the court held the fact that defendant state officials enforced an invalid statute in good faith compliance with their official duties does not constitute special circumstances to deny attorney fees.

Since Gumbhir prevailed under a Kansas constitutional issue which properly prevented a ruling on the federal constitutional issues, we must now re-examine the case to ascertain if the State's action involved a common nucleus of operative facts with a substantial federal claim constituting a deprivation of Gumbhir's federal rights, privileges and immunities. Let us examine the conduct complained of in light of the two requisite elements for recovery under 42 U.S.C. § 1983.

The conduct complained of must have been by some person acting under color of law. Since we previously held "person" includes governmental agencies, it is clear the denial of Ashok Gumbhir's application to take the pharmacy examination for admission under authority of K.S.A. 1979 Supp. 65-1631(a) came squarely within the first requisite.

To come under 42 U.S.C. § 1983, such conduct must have also subjected the complainant to the deprivation of rights, privileges or immunities secured to him by the Constitution and laws of the United States.

This requisite presents a more difficult question. Appellant argues the mere *allegation of a substantial claim* of deprivation of

rights, privileges and immunities secured by the Constitution and laws of the United States is sufficient to trigger the fee shifting mechanism of 42 U.S.C. § 1988, citing *Maher v. Gagne,* 448 U.S. 122, and *Hagans v. Lavine,* 415 U.S. 528, 39 L.Ed.2d 577, 94 S.Ct. 1372 (1974). In both foregoing cases the "substantial claim" statement pertains to the nature of the pleadings required to invoke jurisdiction of federal courts under 28 U.S.C. § 1343. That issue is obviously absent here. We are convinced § 1988 is applicable only in instances where the conduct complained of is an actual deprivation of federal rights, privileges and immunities. Let us now examine appellant's complaint of a federal deprivation. The conduct at issue is the State Board's denial of Gumbhir's right to take the pharmacy examination. Dr. Gumbhir attacked K.S.A. 1979 Supp. 65-1631 under the 5th and 14th Amendment guarantees of Due Process and Equal Protection on the following theories which we will address in order. 1) The statute is unconstitutionally vague; 2) the statute creates an unreasonable classification; 3) the classification is based on the suspect trait of alienage; 4) the appellant was denied a liberty interest to practice his chosen profession; 5) the statute creates an unauthorized delegation of legislative authority.

Is K.S.A. 1979 Supp. 65-1631 unconstitutionally vague? The standard for determining whether a statute is unconstitutional for vagueness is a common-sense determination of fairness. Can an ordinary person exercising ordinary common sense understand and comply with the statute? If so, it is not unconstitutionally vague. *Harris v. McRae,* 448 U.S. 297, 311 n. 17, 65 L.Ed.2d 784, 100 S.Ct. 2671, *reh. denied* 448 U.S. 917 (1980); *CSC v. Letter Carriers,* 413 U.S. 548, 37 L.Ed.2d 796, 93 S.Ct. 2880 (1973).

Statutes which regulate the practice of a profession must be reasonable and advise registrants of the requirements imposed by law. *Morey v. Doud,* 354 U.S. 457, 1 L.Ed.2d 1485, 77 S.Ct. 1344 (1957). K.S.A. 1979 Supp. 65-1631 meets all of the above standards. We hold it is not unconstitutionally vague.

It is unquestioned that the State has a legitimate interest in assuring the public a cadre of competent pharmacists. In furtherance of the state objective, the statute in question creates two classes: a) those who receive undergraduate or first professional degrees from a school or college of pharmacy accredited by the American Council of Pharmaceutical Education (ACOPE) or a

department of a university accredited by ACOPE; and b) all others.

The test of whether the classification offends the Equal Protection Clause involves a consideration of whether the state objective U.S. 420, 425-26, 6 L.Ed.2d 393, 81 S.Ct. 1101 (1961):

"The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

Moreover, the statute in question is clothed with a presumption of constitutionality. Such being the case, the burden of proof as to the invalidity of the statute falls on the one attacking the statute. *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78-79, 55 L.Ed.2d 369, 31 S.Ct. 337 (1911); *Henry v. Bauder,* 213 Kan. 751, 518 P.2d 362 (1974).

The fact that such classification creates a potential inequity does not offend the 14th Amendment of the United States Constitution. See *Dandridge v. Williams,* 397 U.S. 471, 25 L.Ed.2d 491, 90 S.Ct. 1153, *reh. denied* 398 U.S. 914 (1970).

Hence, the paramount issue is whether the requirement of K.S.A. 1979 Supp. 65-1631 concerning accreditation is rationally based on the state interest in insuring the fitness and capacity of those who practice pharmacy in the State of Kansas. The State of Kansas has the general authority to prescribe qualifications for licensure of pharmacists in the state. There is no question that the state interest in developing a field of well-qualified pharmacists is a legitimate one.

"[T]he States have a compelling interest in the practice of professions within their boundaries, and . . . as part of their power to protect the public health, safety and other valid interests they have a broad power to establish standards for licensing practitioners . . . ." *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 792, 44 L.Ed.2d 572, 95 S.Ct. 2004 (1975).

The fact that filling of prescriptions and dispensing of dangerous drugs has such an obvious and direct impact on the public health hardly needs to be mentioned. This important state interest gives the Kansas Legislature a wide range of discretion in classifying applicants for registration as pharmacists to assure that those who are licensed are highly qualified to practice.

The accreditation requirement contained in K.S.A. 1979 Supp.

65-1631 is clearly designed to assure a competent field of practicing pharmacists in the State of Kansas. There is sound reason for distinguishing between graduates of accredited schools and graduates of non-accredited schools. Standards utilized in the accreditation process relate to such important qualities of education as faculty-student ratios, classroom and clinical facilities, and financial resources of the pharmacy program. The direct relationship between these factors and the quality of education offered by a particular program is difficult to dispute. That accreditation bears a direct relationship to the State's interest in providing a field of competent pharmacists is readily demonstrated by an analysis of the criteria utilized in the accreditation process.

Additionally, in both state and federal courts, educational accreditation requirements have been upheld as constitutional under the 14th Amendment. See *Lombardi v. Tauro,* 470 F.2d 798 (1st Cir. 1972), *cert. denied* 412 U.S. 919 (1973); *Kadans v. Collins,* 441 F.2d 657 (9th Cir. 1971); *Hackin v. Lockwood,* 361 F.2d 499 (9th Cir. 1966), *cert. denied* 389 U.S. 143 (1967); *Harris v. Louisiana State Supreme Court,* 334 F. Supp. 1289 (E.D. La. 1971); *In re Stephenson,* 511 P.2d 136 (Alaska 1973); *Application of Schatz,* 80 Wash. 2d 604, 497 P.2d 153 (1972); *In re Eisenson,* 272 So. 2d 486 (Fla. 1973), *Henington v. State Board of Bar Examiners,* 60 N.M. 393, 291 P.2d 1108 (1956). The majority of these cases involve the requirement that a bar applicant must be a graduate of a law school approved by the American Bar Association and all cases upheld the requirement as constitutional.

In *In re Application of Bryan M. Hansen,* 275 N.W.2d 790 (Minn. 1978), the plaintiff attacked Minnesota's rule requiring proof of graduation from an ABA-approved law school as a prerequisite to sitting for the bar examination as being unconstitutional in violation of the Due Process and Equal Protection clauses of the 14th Amendment. Here the Court noted that although the applicant may have a strong interest in being able to practice law, the state can regulate admission as long as such regulation is reasonably related to the state's interest in a competent bar. The court noted that a procedure is reasonable as long as it is not arbitrary and capricious. The Minnesota Court also concluded that the ABA is best equipped to perform the function of accrediting law schools. 275 N.W.2d at 794. The Minnesota

Court found that there is no violation of the Equal Protection Clause since classifications will be upheld as long as they are reasonably related to some legitimate governmental purpose. 275 N.W.2d at 796. The Court concluded that the distinction between graduates of accredited and non-accredited law schools is reasonably related to insuring a competent bar. Analogously, the distinction between graduates of accredited and non-accredited pharmacy schools is rationally related to insuring a competent field of practicing pharmacists.

Appellant argues the classification created by K.S.A. 1979 Supp. 65-1631 is based on the suspect trait of alienage and hence requires the courts to closely scrutinize the reasonableness of such classification. Cases involving "suspect classifications" or "fundamental interests" force the courts to peel away the protective presumption of constitutionality and adopt an attitude of active and critical analysis, thus subjecting the classification to strict scrutiny. The effect is to shift the burden of proof to justify the classification from the individual attacking such classification to the State or its agencies. *Shapiro v. Thompson,* 394 U.S. 618, 22 L.Ed.2d 600, 89 S.Ct. 1322 (1969). See also *Graham v. Richardson,* 403 U.S. 365, 29 L.Ed.2d 534, 91 S.Ct. 1848 (1971).

Contrary to the argument above, K.S.A. 1979 Supp. 65-1631 creates a classification based on education; there is no requirement which addresses citizenship or alienage. The statute, in fact, classifies on the basis of education and distinguishes between applicants whose education has met the standards and those whose education has not met the standards. Consequently, reliance on the case of *Wong v. Hohnstrom,* 405 F. Supp. 727 (D. Minn. 1975), is misplaced. In that case, the plaintiff was an alien who was denied application or registration solely for the reason that the statute in question explicitly referred to alienage for its turning point. In the case at bar, however, Gumbhir was denied application for registration solely because he had failed to meet the explicit educational requirements set forth in the statute. We hold the denial of appellant's application was not based on alienage and his equal protection argument is gauged by the rational relation test.

Appellant further argues that because he was unable to practice his chosen profession in the State of Kansas he was being denied a liberty interest under the Due Process and Equal Protection

clauses of the United States Constitution. Contrary to appellant's assertion that he has a constitutionally secured right to practice his profession, numerous cases have recognized that there is no fundamental interest involved in the practice of medicine (*Shaw v. Hospital Authority of Cobb County,* 507 F.2d 615 [5th Cir. 1975]; *Jones v. State Board of Medicine,* 97 Idaho 859, 555 P.2d 399, *cert. denied* 431 U.S. 914 [1976]), or in any other profession. *Naismith Dental Corp. v. Board of Dental Examiners,* 68 Cal. App. 3d 253, 137 Cal. Rptr. 133 (1977). Analogously, the practice of pharmacy is not a fundamental interest explicitly or implicitly guaranteed by the Constitution.

The appellant concedes that the Kansas State Board of Pharmacy is authorized to set forth requirements for licensure and registration of pharmacists. The provisions of K.S.A. 1979 Supp. 65-1631 bear a rational relationship to the state interest in protecting the health and welfare of its citizens by assuring competent practicing pharmacists and the statute therefore is able to withstand the attack that it does not provide equal protection.

Appellant has presented no personal interests which outweigh the important, substantive and administrative interests which Kansas has in the enforcement of K.S.A. 1979 Supp. 65-1631. The interests which appellant does assert are not based on constitutional guarantees, but upon his preference in pharmacy education and Kansas' failure to conform or defer to that preference and its own constitution. We hold appellant's liberty interest guaranteed under the U.S. Constitution was not unconstitutionally denied.

Finally, appellant contends the unauthorized delegation of legislative authority found herein to violate the Kansas Constitution is also a violation of the Constitution of the United States. We disagree. This case pertains to a state statute providing for the licensing of pharmacists by a state administrative body; a function of the state. Justice Cardozo, speaking for the U.S. Supreme Court, in *Highland Farms Dairy v. Agnew,* 300 U.S. 608, 612, 81 L.Ed. 835, 57 S.Ct. 549 (1937) states:

"The argument . . . is that in this there was a grant of discretionary power overpassing the limits of lawful discretion.

"The Constitution of the United States . . . has no voice upon the subject. The statute challenged as invalid is one adopted by a state. This removes objections that might be worthy of consideration if we were dealing with an act of Congress. How power shall be distributed by a state among its governmental organs is commonly, if not always, a question for the state itself."

*E.g., Lombardi v. Tauro,* 470 F.2d 798; *Parcell v. State of Kan.,* 468 F. Supp. 1274, 1277 (D. Kan. 1979); *Rite Aid Corp. v. Bd. of Pharmacy of State of N.J.,* 421 F. Supp. 1161, 1178 (D. N.J. 1976).

We therefore conclude the state claim upon which Gumbhir prevailed below did not involve a common nucleus of operative facts with a substantial federal claim because the Kansas State Board of Pharmacy did not subject Gumbhir to a deprivation of rights, privileges or immunities secured to him by the Constitution and laws of the United States. Thus, Gumbhir is not a prevailing party as required since there was no 42 U.S.C. § 1983 violation upon which a civil rights attorney fee claim could be based.

The judgment of the trial court is affirmed.

HOLMES and McFARLAND, JJ., concur in the result.