(704 P.2d 997)

No. 57,063

CITY OF OVERLAND PARK, KANSAS, *Plaintiff-Appellee,* v. EVERETT L. McLAUGHLIN, *Defendant-Appellant.*

Opinion filed August 15, 1985.

*S. W. Longan, III* and *Patricia L. Lear-Johnson,* of Wolf & Longan, of Stanley, for appellant.

*Karen Arnold-Burger,* assistant city attorney, for appellee.

Before SWINEHART, P.J., MEYER, J. and HARRY G. MILLER, District Judge, retired, assigned.

MEYER, J.: After a trial to the court, Everett McLaughlin (defendant) was convicted of driving a truck in excess of the allowed rear axle weight and in excess of the allowed extreme axle weight, both violations of Overland Park Municipal Ordinance TC-1190 § 12.04.196.1. Defendant appeals, challenging the constitutionality of the ordinance and charging the ordinance as violative of K.S.A. 12-3009 *et seq.*

On May 20, 1983, at approximately noon, two City of Overland Park police officers had a cement truck stopped to investigate the weight of its load. While talking to the driver of the stopped cement truck, the officers overheard an unidentified person's voice come over the truck's radio. The person stated he knew his truck was overweight, knew the police were stopping trucks for weight checks, and thus was going to drive down 119th Street to avoid being stopped. The two officers immediately proceeded to 119th Street to wait for the driver they had heard on the radio. The officers flagged down the first cement truck to pass by. The

driver of that truck stated the cement truck coming right behind him was overweight. The two officers stopped this next truck. It was a cement truck driven by Everett McLaughlin, defendant.

Once the defendant's truck was stopped, the officers asked for defendant's load sheet. This sheet stated defendant was carrying ten yards of concrete. Portable scales were called for and defendant's truck was weighed. Complaint No. 22356 was issued, charging that defendant's vehicle was 16,000 pounds in excess of the allowed rear axle weight; and Complaint No. 22709 was issued, charging that defendant was 17,000 pounds in excess of the allowed "bridge weight."

On July 26, 1983, the case was tried on the record in municipal court. The defendant was found guilty on both charges and fined a total of $3,200. He appealed his conviction to the Johnson County District Court.

On November 18, 1983, defendant's case came on for trial. The plaintiff moved to amend Complaint No. 22709 pursuant to K.S.A. 12-4505 and K.S.A. 22-3610 to read "in excess of allowed weight, distance between extreme axles." The court allowed the amendment. The plaintiff was allowed to present its case in chief at the conclusion of which the case was continued until February 3, 1984, at defendant's request.

On February 3, 1984, the court found the defendant guilty on both counts. This appeal follows.

Defendant first contends that Overland Park Municipal Ordinance TC-1190 § 12.04.196.1 violates his due process and equal protection rights because it excludes defendant's cement truck from a category of vehicles not subject to the ordinance.

Overland Park Municipal Ordinance TC-1190 § 12.04.196.1 incorporates by reference, as if set out in full, the provisions of K.S.A. 8-1909. It is actually, therefore, K.S.A. 8-1909 to which defendant bases his constitutional challenges. This statute, in subsection (a)(2), provides certain weight limitations on vehicles. These weight limits are based upon distance in feet between the first and last axles of vehicles. It is these weight limits which defendant was found guilty of violating. In subsection (a)(3) of K.S.A. 8-1909, it is stated that the table of weight limits in subsection (2) is not applicable "to truck tractor and dump semitrailer or truck trailer combination[s]. . . ." Defendant raises his constitutional challenges based upon the omission of

cement trucks from the list of vehicles not subject to the weight restrictions. Defendant argues this omission is a denial of due process and equal protection under the law.

The equal protection clause of our Constitution goes no further than to prohibit invidious discrimination. *Zerr v. Tilton*, 224 Kan. 394, 397, 581 P.2d 364 (1978). Defendant does not quarrel with the power of a state to make classifications for legislative purposes. Indeed, the United States Supreme Court has held that states and municipalities may create statutory classifications in order to regulate local affairs as long as the classifications are *reasonably drawn* and are rationally related to *legitimate state interests*. See *New Orleans v. Dukes*, 427 U.S. 297, 303, 49 L.Ed.2d 511, 96 S.Ct. 2513 (1976). See also *Iowa National Mut. Ins. Co. v. City of Osawatomie, Kansas*, 458 F.2d 1124 (10th Cir. 1972); *Gumbhir v. Kansas State Board of Pharmacy*, 231 Kan. 507, 646 P.2d 1078 (1982), *cert. denied* 459 U.S. 1103 (1983); *Aubertin v. Board of Cty. Com'rs of Woodson Cty.*, 588 F.2d 781 (10th Cir. 1978).

In the instant case, the defendant denies there is any rational basis for distinguishing between cement trucks and those other classes of trucks not required to meet the weight limitations of K.S.A. 8-1909. Defendant divides his arguments into three parts.

First, defendant argues there is no difference between concrete trucks and truck tractors, dump semitrailers or truck-trailer combinations. Defendant states that his truck, like the others, is used in the transportation of construction materials and thus should be treated like the others.

Defendant's second contention is that by excluding truck tractors, dump semitrailers and truck-trailer combinations, the state is giving a commercial advantage to the asphalt industry. Defendant states that the weight limitations imposed by the statute force him to make more trips to do the same job as trucks carrying asphalt, which can carry heavier loads. Defendant claims his cost is thus increased and the asphalt industry has a competitive edge.

Finally defendant argues that the legislative purpose of K.S.A. 8-1909 is to promote construction. Defendant contends the concrete industry is as interested in construction as the asphalt and other industries. He contends that if the legislature intended to promote construction, cement trucks should be freed from any

weight restrictions just as are other trucks hauling construction materials.

The City of Overland Park, in contrast, asserts that the legitimate state interest present in the statute is "safety." The plaintiff presented rebuttal evidence in this case through testimony of Mr. Eugene Pugh, safety specialist with the Kansas Department of Transportation. Mr. Pugh testified that he had been with the department for 34 years and that he was working for the department in 1973 when the exemption in question was placed in K.S.A. 8-1909. He testified that from a safety standpoint, if the exemption were not contained in the statute, the trucks so exempted would be in danger of tipping over when they divested themselves of their loads. For safety purposes, it is necessary that those trucks be allowed to carry heavier loads.

Mr. Pugh testified that all the trucks that are exempted in K.S.A. 8-1909(3) dump their loads by rising to dump them. He testified that the defendant's cement truck was not exempted because it does not rise to dump and thus there is no danger of tipping due to a light load. The cargo area on a cement truck does not change position to divest itself of its load, as do the exempted trucks.

Defendant denies that there is a legitimate state interest of safety present in K.S.A. 8-1909. Defendant states that the length of a dump bed in truck tractors, semitrailer trucks and tractor-trailer combinations is not a safety concern, thus safety could not have been the purpose behind the statute. Defendant also argues that K.S.A. 8-1909(b)(1) and (2) contain certain safety requirements for *every* vehicle. He argues subsection (b)(1) and (2) are the safety provisions of K.S.A. 8-1909; thus subsection (a)(3) could not have been written for safety purposes also.

The district court found as follows: "The Court finds that O.P.M.C. 12.04.196.1 is constitutional and not discriminatory, due to its purpose of promoting public safety."

In *State v. Shouse*, 8 Kan. App. 2d 483, 660 P.2d 970 (1983), the defendant was convicted of driving an overweight truck in violation of K.S.A. 8-1909. Following his conviction, he appealed challenging the constitutionality of the statute on the basis that 8-1909 denied him equal protection of the law because it exempted trucks carrying certain cargos but not his cargo of logs. Under the statute, a truck was exempt from the weight require-

ments where it was used exclusively for the transportation of sand, salt, and other materials, when such vehicles were used for transportation to a construction site, highway maintenance, or storage facility. The defendant Shouse argued that the statute impermissibly distinguished among motor carriers on the basis of the content of the load, and thus violated the guarantee of equal protection. This court rejected the defendant's contention, holding that equal protection of the laws was not violated merely because trucks carrying cargos different from that carried by defendant were exempt.

There are cases in other jurisdictions where the issue raised in this case was presented for determination. The general rule to be applied in determining the constitutionality of an exemption to statutory limitations on the weight, size, and load of motor carriers and trucks is stated as follows in 7A Am. Jur. 2d, Automobiles and Highway Traffic § 196:

"It has been held or recognized in numerous cases, either expressly or by implication, that the state has the power to enact and enforce reasonable and nondiscriminatory regulations limiting the weight of vehicles or their loads with respect to their use of the highways. The basis for this exercise of the police power is the protection of the highways, for the construction and maintenance of which the state is responsible.

"To be valid, state regulations of the weight of a motor vehicle or the load thereon to be transported must not be unreasonable, arbitrary, or discriminatory in their provisions or operation. But the reasonableness of various types and degrees of statewide weight limitations imposed by states has been usually upheld, the general view being that the states have wide legislative discretion in the matter. In numerous cases upholding weight limitations, the courts have rejected contentions of illegal discrimination with respect to classifications differentiating between *different types of vehicles*, vehicles used in different types of business, freight motor carriers and railroads, trucks and passenger buses, private vehicles and those licensed as common carriers, private vehicles and government vehicles . . . and the like." (Emphasis added.)

An annotation in 75 A.L.R.2d 376 discusses the power of a state or municipality to limit the weight of a vehicle or its load with respect to the use of streets or highways. The annotation cites many cases which recognize that although, constitutionally speaking, the power of government to impose weight limitations upon vehicles using the highways is limited to the nondiscriminatory exercise thereof, contentions that many different kinds of classifications employed constituted invalid discrimination have been almost universally rejected. The cases which involve discrimination as to weight restrictions between vehicles carry-

ing different cargos hold that such a classification is valid and does not violate equal protection of the laws. In the following cases, a state statute restricting the size and weight of trucks was held not to be invalid because different forms of vehicles were allowed to carry different cargos: *Morris v. Duby*, 274 U.S. 135, 71 L.Ed. 966, 47 S.Ct. 548 (1927); *Sproles v. Binford*, 286 U.S. 374, 76 L.Ed. 1167, 52 S.Ct. 581 (1932); *Ex Parte Sterling et al.*, 122 Tex. 108, 53 S.W.2d 294 (1932); *Phares v. Bilbo Transp. Co.*, 53 S.W.2d 512 (Tex. Civ. App. 1932).

The test of whether a classification offends the equal protection clause involves the consideration of whether the asserted state objective is furthered by the classification. To determine whether the state objective is furthered, a "reasonable basis" test is used, under which the statute in question is clothed with a presumption of constitutionality and the burden of proof to show the invalidity of the statute is placed upon the one attacking its validity. *Gumbhir v. Kansas State Board of Pharmacy*, 231 Kan. at 519. Moreover, Kansas courts have determined that the reasonable basis test is violated only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective. *Manhattan Buildings, Inc. v. Hurley*, 231 Kan. 20, 643 P.2d 87 (1982).

Thus, as the statute possesses a presumption of constitutionality, as the burden of showing invalidity is on defendant, and as it cannot be said the classifications used are "wholly irrelevant" to the furtherance of safety, it appears a legitimate state interest exists. As such, it cannot be said the statute is unconstitutional on equal protection grounds. Therefore, if K.S.A. 8-1909 is not unconstitutional, the Overland Park Municipal Ordinance incorporating the statute likewise does not violate equal protection of the law.

The defendant's second contention on appeal concerns the precise meaning of K.S.A. 12-3009 and K.S.A. 12-3010. These two statutes govern the incorporation of state statutes into local ordinances.

K.S.A. 12-3009 delineates the subjects which may be incorporated into local ordinances by reference as follows:

"Any city is hereby authorized and empowered to incorporate in an ordinance by reference, in the manner hereinafter provided, any standard or model code or ordinance, [or] regulation having the effect of law of a state officer, board or other

agency, or statute, or portions thereof on any subject on which a city may legislate . . . ."

The specific requirements for incorporation by reference are then provided in K.S.A. 12-3010 as follows:

"The provisions of any . . . statute or portions thereof incorporated in an ordinance by reference shall be as much a part of the ordinance as if the same had been set out in full therein when the ordinance shall have been passed by the governing body of the city and published in the manner provided by law, . . . *Provided further,* . . . statutes or portions thereof shall be identified by appropriate reference to Session Laws, General Statutes or Supplements thereto . . . ."

Defendant contends the ordinance is void because it does not specify the year of the statute incorporated and because it does not refer to the Session Laws, from which the statute so incorporated was taken.

Overland Park Municipal Ordinance TC-1190 was adopted on October 18, 1982.

Section 21 of TC-1190 reads as follows:

"SECTION 21. Overland Park Municipal Code Section 12.04.196.1 is hereby added and shall read as follows:

. . . .

"12.04.196.1. VEHICLE HEIGHT, WEIGHT LENGTH, AND WIDTH.

. . . .

"(c) The gross weight of vehicles as to wheel and axle loads shall not exceed the limitations prescribed by K.S.A. 8-1908 or any amendments thereto, which are incorporated by reference as if set out in full herein.

. . . .

"(e) The gross weight of any vehicle or combination of vehicles shall not exceed the limitation prescribed by K.S.A. 8-1909 or any amendments thereto, which are incorporated by reference as if set out in full herein."

At the time this ordinance was adopted, K.S.A. 8-1908 and K.S.A. 8-1909 existed in the general statutes, and had been amended by the state legislature in 1981. Thus, as of October 18, 1982, both statutes appeared in the 1981 Supplement to the General Statutes of Kansas. As statutory supplements are considered part of the general statutes themselves, the amended versions of K.S.A. 8-1908 and K.S.A. 8-1909 were, theoretically, present in the general statutes.

K.S.A. 12-3010 provides that in order for a city ordinance incorporating a statute to be valid, "statutes or portions thereof shall be identified by appropriate reference to Session Laws, General Statutes or Supplements." The trial court found that the city ordinance correctly identified the statute book containing

the most recent version of the law. On appeal a statute may be construed and its legal effect determined by the appellate court.

The fundamental rule of statutory construction is that the purpose and intent of the legislature governs. See *Jackson v. City of Kansas City*, 235 Kan. 278, 680 P.2d 877 (1984). Although we found no Kansas cases to guide us in our interpretation of the statute, the language chosen by the legislature leads us to conclude that it is sufficient if a municipal ordinance incorporates a statute by reference to the general statutes and amendments which may, from the time the ordinance is adopted, occur. All that K.S.A. 12-3010 requires is that statutes incorporated into municipal ordinances be appropriately identified. K.S.A. 12-3010 provides that it is appropriate if a local ordinance identifies a statute by reference to the general statutes. This the Overland Park ordinance, by referring to K.S.A. 8-1908, K.S.A. 8-1909, and any amendments thereafter, specifically did. The district court did not err in finding that the city ordinance met the statutory requirements of K.S.A. 12-3010.

The defendant also contends, however, that the Overland Park ordinance is invalid because the City does not have three official copies of K.S.A. 8-1908 and K.S.A. 8-1909 attached to it. K.S.A. 12-3010, however, does not require that official copies of state statutes be kept on file. With regard to the requirement that official copies be kept of record, K.S.A. 12-3010 mandates this only for "standards," "model codes," "ordinances," or "state regulations." K.S.A. 12-3010 does not refer to "statutes" in its listing of those documents of which copies must be kept. A state statute is not a standard, a model code, or an ordinance. Likewise the term "state regulation" is not synonymous with "statute" because the two are used separately and distinctly elsewhere in the body of K.S.A. 12-3010. When "statute" is meant to be included in various parts of K.S.A. 12-3010, the legislature included it. However, the last two provisions of the statute specifically omit the term. Thus, the legisture has not required that three official copies of any statute incorporated into a municipal ordinance be kept on file.

The defendant's final contention is that the Overland Park Municipal Ordinance is void because, although it incorporates K.S.A. 8-1908 and K.S.A. 8-1909, it does not specify which version of these statutes, the version present in the 1981

amendment or the pre-amendment version, is being incorporated. Defendant uses as illustration the fact that 8-1909, before its July 1, 1981, amendment by the legislature, had weight restrictions based upon "bridge weight" which were later omit-ted by the amendment to the statute. Defendant contends the Overland Park ordinance is unconstitutionally vague because it is unclear whether "bridge weight" remains a statutory weight restriction. As support for his argument, defendant states that he was originally charged with a violation of "bridge weight" and that this charge had to be later amended because no such weight restriction was present in K.S.A. 8-1909.

The City of Overland Park, in contrast, contends that K.S.A. 8-1908 and K.S.A. 8-1909 are clear and specific and that "O.P.M.C. § 12.04.196.1 incorporates the state statute by reference in a way that could not be clearer." The City contends defendant had no confusion regarding the violations of the statutes.

Due process requires that a law provide sufficient guides for police and other persons. *Kansas Retail Trade Co-op v. Stephan*, 522 F. Supp. 632 (D. Kan. 1981). A statute or ordinance must give fair warning to those potentially subject to it. An ordinance which forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application violates due process. *Cardarella v. City of Overland Park*, 228 Kan. 698, 703, 620 P.2d 1122 (1980). The district court determined that the Overland Park Municipal Ordinance met all required constitutional standards. Where the district court has made findings of fact and conclusions of law, the function of this court on appeal is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. *Iola State Bank v. Bolan*, 235 Kan. 175, 187, 679 P.2d 720 (1984).

The evidence in this case supporting the trial court's conclusion that the municipal ordinance was constitutional is the fact that the police officers overheard defendant state he knew his truck was overweight. Specifically, one officer testified he overheard someone (who later turned out to be the defendant) say "he would go down to 119th Street instead of coming across College Boulevard, and miss us, as he knew he was overweight."

Since the test for vagueness is whether a man of ordinary intelligence could readily discern a statute's meaning, this evidence weighs heavily against defendant. It shows that defendant knew there were weight limits and that these limits were codified in statutes or ordinances making it a violation of the law to be overweight. We therefore conclude that the district court did not err in finding that the municipal ordinance, especially as applied to the defendant in this particular case, was not unconstitutionally vague.

The judgment of the trial court is affirmed.