No. 63,167

STATE OF KANSAS, *Appellee*, v. CUB M. RIDDLE, *Appellant*.

(788 P.2d 266)

Opinion filed March 2, 1990.

*Lucille Marino*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*Mary Murguia*, assistant district attorney, argued the cause, and *Nick A. Tomasic*, district attorney, and *Robert T. Stephan*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Cub Riddle appeals his conviction of one count of aggravated sodomy (K.S.A. 21-3506). He argues that the evidence police seized after he was arrested should have been suppressed. Riddle claims that, because officers seized him on the front porch of his dwelling prior to obtaining an arrest warrant, the arrest was illegal and the evidence obtained after the illegal arrest should have been suppressed as fruit of the poisonous tree. We disagree and affirm the district court.

On March 6, 1988, Ms. S. informed the police that she had been abducted and sexually attacked earlier that morning by a black male named Cub, whom she had met at a party the previous evening. Although Ms. S. had driven the man to his home, she could not remember his address. One of her friends told police that the man lived at 5131 Dodson in Kansas City, Kansas. When

the police checked the address, they were met at the door by a black male who identified himself as Cub Riddle. The officers asked Riddle to step outside. When he did, the officer arrested him and seized from the dwelling the clothing he said he had worn the previous evening. On appeal, Riddle claims the trial court erred in failing to suppress the evidence that was seized from his home in conjunction with an unlawful, warrantless arrest. Other facts will be provided as necessary.

Two of the statutory circumstances under which a law enforcement officer may arrest a person are when (1) the officer has a warrant commanding that the person be arrested, and (2) the officer has probable cause to believe that the person has committed a felony. K.S.A. 22-2401.

Here, officers had probable cause to believe an individual had committed a felony but had not obtained a warrant for his arrest. There is a constitutional distinction as to where a warrantless arrest may be executed. A valid arrest for a felony may be made without a warrant in a public place based upon probable cause. However, the existence of probable cause does not per se authorize a forcible entry into a person's residence to make a warrantless arrest. *State v. Platten*, 225 Kan. 764, 768, 594 P.2d 201 (1979).

Following our decision in *Platten*, the United States Supreme Court decided *Payton v. New York*, 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980). In *Payton*, officers broke into a murder suspect's apartment prior to obtaining a warrant for his arrest. The Supreme Court held that, unless special circumstances are present, warrantless arrests in the home are unconstitutional. 445 U.S. at 590. In reaching its decision, the Court recognized the purpose of the Fourth Amendment in limiting the authority of general warrants that are not based upon probable cause. The Court noted that "the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' " 445 U.S. at 585.

In the present case, the trial court found that Riddle had been arrested in a lawful manner outside his home—in a public place, *i.e.*, on his front porch. The arresting officer, Detective Mohler, testified:

"Q. What did you do next?

"A. I contacted another detective named Kenneth Allen and advised him I was going back out to the Dodson address to see if in fact a black male lived at that address by the name of Cub. And asked him if he would meet me. We proceeded to the area of approximately 51 and Gibbs and waited for assistance from the South Patrol Uniform Division so there would be no misunderstanding that we were in fact police officers. 2 uniformed officers arrived. I advised them where we were going and what the purpose of our going there was. The 2 officers and the detective and myself then proceeded to 5131 Dodson, and exited the vehicle. One uniformed officer went to the back of the residence, one started towards the side of the residence and we approached the front. A young black male came to the front door. I identified myself as a police officer. A uniformed officer came to my side and Detective Allen was on my left. I asked the man what his name was. He identified himself as Cub Riddle. I asked him to step outside, we'd like to talk to him. He exited the residence and stood on a small stone on the front porch. I advised him why we were there and that a complaint had been lodged and we believed he was a suspect in a rape and we would have to ask him to come with us to the Police Department of Kansas City, Kansas so we could interview him. He said he would like to get some clothing on. He just had a pair of pants on. We told him we would need the clothes he wore the night before.

"Q. Did he give them to you?

"A. Yes. He ushered us into the residence and his wife was sitting on the divan by the door as you enter. We entered a small bedroom where he got dressed and handed us some clothing. That was a green coat and a pair of blue nylon type pants and a pair of black tennis shoes and I believe a T-shirt. We then proceeded back into the front room. Officer Nelson took Mr. Riddle to his patrol car and transported him to the Detective Bureau. At that time I talked to Mrs. Sherri Riddle and explained to her what we were doing and why we were there. She had not moved from the divan from the time we arrived. I asked her if she could maybe shed some light on the whereabouts of her husband."

Though Riddle claims he was arrested before he exited the house, the testimony of Detective Allen and Riddle's wife, Sherri, supports the district court's finding that he was arrested outside the house. Where the district court has made findings of fact and conclusions of law, the function of appellate courts is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. *City of Overland Park v. McLaughlin*, 10 Kan. App. 2d 537, 545, 704 P.2d 997 (1985), *aff'd* 238 Kan.

637 (1986). There is substantial competent evidence to support the trial court's finding that Riddle was arrested on his porch after he had exited the house.

The State cites *United States v. Santana*, 427 U.S. 38, 49 L. Ed. 2d 300, 96 S. Ct. 2406 (1976), for the proposition that Riddle was in a public place when he stepped onto the porch, thereby making him subject to a warrantless arrest. In *Santana*, an undercover narcotics officer arranged to buy heroin from McCafferty and waited while she obtained the drugs from Santana. McCafferty returned with the heroin and was arrested. Moments later, officers observed Santana standing in the doorway of her home, holding a bag which contained packets of heroin. As the officers approached the house and identified themselves, Santana retreated into her vestibule. The police followed her into the house and arrested her. Santana was subsequently convicted for possession of heroin with intent to distribute. In affirming Santana's conviction, the Court first held that she had no reasonable expectation of privacy while standing in her doorway. Since the officers had probable cause to believe that she had committed a felony, there was no Fourth Amendment violation when they attempted to arrest her without a warrant.

Even if the arrest actually took place outside the home, Riddle argues: "Without the prior judicial determination of probable cause, it is unconstitutional to require a citizen to open doors in order to then effect a warrantless arrest." We disagree. The focus in *Santana* was upon exigent circumstances, *i.e.*, the hot pursuit exception to the prohibition against a warrantless arrest in the accused's home, not whether an arrest of an individual in the doorway of his or her home was legal. Here, rather than adopting *Santana's* exigent circumstances rationale, the trial court found that defendant had been legally arrested outside the house.

A warrantless arrest has been deemed unobjectionable when a defendant came outside at the request of police who did not reveal their intention to arrest, or, indeed, even when the police engaged in some affirmative misrepresentation, such as that they merely wanted to discuss matters with the defendant or that the defendant was viewed by them only as a suspect or a witness. Such ruses have been considered permissible in other contexts where courts have considered police tactics of misinformation and

have found no constitutional violation. 2 LaFave, Search and Seizure § 6.1(e) (1978).

In *People v. Moore*, 105 Ill. App. 3d 264, 434 N.E.2d 300 (1982), the defendant claimed he was induced to leave his home by deception; therefore, his presence on the street was not voluntary. Before his warrantless arrest, the police had falsely informed the defendant that he was not the target of the investigation and successfully lured him out of his home. The court found that the police had not concealed their identity or the fact that they were investigating a robbery. The fact that the police used subterfuge to lure the defendant outside of his home was held to have not been an illegal attempt to circumvent the rule announced in *Payton*. The court then cited several cases where police tactics of misinformation were not a constitutional violation. See *Lewis v. United States*, 385 U.S. 206, 210, 17 L. Ed. 2d 312, 87 S. Ct. 424 (1966) (no violation of defendant's privacy when policeman misrepresented his identity in order to gain admittance to defendant's home and purchase illegal drugs); *People v. Boerckel*, 68 Ill. App. 3d 103, 111-12, 385 N.E.2d 815 (1979), *cert. denied* 447 U.S. 911 (1980) (fact that police misrepresented the evidence against defendant did not render his confession involuntary or violate fundamental fairness); *People v. Houston*, 36 Ill. App. 3d 695, 699, 344 N.E.2d 641 (1976), *cert. denied* 429 U.S. 1109 (1977) (police officer investigating an armed robbery stated that he was investigating an accident; "subtle subterfuge" held constitutionally permissible).

Here, Riddle knew that he was being asked to step outside by police officers. The officers made no misrepresentation of their intentions to him. Once he was outside on the porch, they informed him that he was a suspect in a rape investigation and requested that he accompany them to the police department. We agree that when an individual recognizes that law enforcement officers are asking him to step outside of his dwelling and when he voluntarily opens the door and steps outside onto the porch, the individual has no expectation of privacy. A warrantless arrest of an individual on his or her front porch does not intrude on the individual's expectation of privacy and, therefore, if the arrest is based on probable cause, it is not illegal. Based on the record and the cited authority, Riddle's arrest was legal.

Riddle contends that, because his arrest was illegal, his consent to search following his arrest was invalid. Because of our holding that Riddle's arrest was legal, the validity of his consent to the search after his arrest is not an issue. The record indicates that Riddle consented to the search by voluntarily giving the police the evidence to which he now objects.

The judgment of the district court is affirmed.