No. 99,478

STATE OF KANSAS, *Appellee*, v. KAMERON KING, *Appellant*.

(274 P.3d 599)

Opinion filed March 9, 2012.

*Matthew J. Edge*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Jennifer S. Tatum*, assistant district attorney, argued the cause, and *Jerome A. Gorman*, district attorney, and *Steve Six*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: After a jury trial, Kameron King was convicted of possession of cocaine and failure to display a drug tax stamp. He was sentenced to 34 months' imprisonment. The Court of Appeals affirmed. This court granted review of (1) whether the arrest was lawful, (2) whether the trial court's exclusion of three witnesses prevented King from presenting his theory of defense, and (3) whether his sentence violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

## FACTUAL BACKGROUND

On June 2, 2005, Officer Stanturf attempted to stop a vehicle driving without its headlights on, but when the vehicle stopped the occupants fled on foot. From previous encounters, Stanturf recognized the driver as Kameron King. Stanturf was unable to apprehend King that day, but he issued tickets for driving without headlights, driving while suspended, and obstructing justice for running from the scene of the stop. The tickets included a misdemeanor summons for King that Stanturf kept on the clipboard in his patrol car, expecting he would come into contact with King again.

On June 17, 2005, Stanturf, along with other officers, responded to a disturbance call at a private residence. The officers gave varied testimony on the location of the individuals involved in the disturbance, but generally placed King, Sean Valasquez, and Amanda Velasquez in the yard or on a screened-in porch in the front of the house. Stanturf ordered King to come to the doorway of the porch, and King complied. Stanturf arrested King for the misdemeanors committed on June 2, 2005. When Stanturf searched King before placing him in the patrol car, the officer found a baggie of cocaine and a large sum of cash in his pants pocket. Over $700 in cash and the baggie of cocaine were admitted as evidence at trial.

King and two witnesses on his behalf gave a markedly different version of the night's events. All three testified that six or seven adults were peacefully enjoying the evening on the porch after a family-friendly barbeque while their children played inside the house. The adults had watched several police vehicles pass the

house and assumed the police were searching for someone. Seemingly without explanation, several officers burst onto the porch and arrested King.

Ryan Hudnall, a long-time friend and current employer of King, testified that he had paid King $2,400 in cash earlier that day for a 3-week siding project that he had just finished. Hudnall testified that the arresting officer pulled something from his own pocket before searching King, with the suggestion that Stanturf planted the cocaine on King during the search. Both Hudnall and Shana Howard testified that Stanturf said something to the effect that King would "be better off with a bullet in [his] head."

King testified that Hudnall paid him $2,400 before his arrest, which he put in his pants pocket. King described a family barbeque that included at least six other adults and their children. The adults were sitting on the screened-in porch, drinking beer and smoking. They saw the police cruising the neighborhood and wondered what was going on. According to King, the police ran up on the porch, pushed him against the house, and arrested him. King testified that Stanturf removed $2,400 from his pocket and placed it on the hood of the police car. King said that Stanturf also produced a baggie of cocaine and put it on the hood of the police car. King denied that the cocaine was his, both at the time of his arrest and in his trial testimony.

King proffered three additional witnesses to testify to the events before and after his arrest on June 17, 2005. These witnesses supported King's theory that the south patrol division was, for lack of a better term, out to get him. These witnesses would have testified to a pattern of harassment and evidence fabrication against King. The trial court did not permit the three witnesses to testify. The specifics of their proffered testimony are discussed more thoroughly below.

King was charged with possession of cocaine and possession of a controlled substance without a tax stamp. A jury found King guilty on both counts. King was sentenced to 34 months' imprisonment for possession of cocaine and 6 months' imprisonment for possession of a controlled substance without a tax stamp, to run concurrent with the first count. In a divided opinion, the Court of Appeals

affirmed. *State v. King*, No. 99,478, 2009 WL 2499243 (Kan. App. 2009) (unpublished opinion).

## LAWFUL ARREST

Stanturf allegedly found the cocaine that provided the basis for the charges in this case in a search incident to King's arrest. King argues that (1) the officer had no authority to arrest him for a misdemeanor committed 2 weeks before, and (2) the officer had no authority to arrest him because King was in an enclosed porch that was part of his home.

### Standard of Review

"On a motion to suppress evidence, this court generally reviews the factual findings underlying the district court's suppression decision by a substantial competent evidence standard and the ultimate legal conclusion drawn from those factual findings by a de novo standard. The court does not reweigh the evidence. When the parties do not dispute the material facts, however, the suppression question is solely one of law." *State v. Coleman*, 292 Kan. 813, Syl. ¶ 3, 257 P.3d 320 (2011).

This case also requires the court to interpret K.S.A. 22-2401. Statutory interpretation is a question of law, and this court's review is unlimited. If the statute is plain and unambiguous, we rely on the plain langugage of the statute. *State v. McDaniel*, 292 Kan. 443, 444-45, 254 P.3d 534 (2011).

### Authority to Arrest for a Misdemeanor

King argues that his arrest was not proper under K.S.A. 22-2401(d) because Stanturf based the arrest on a misdemeanor that occurred 2 weeks prior to the arrest. K.S.A. 22-2401(d) allows a law enforcement officer to arrest a person when "[a]ny crime, except a traffic infraction or a cigarette or tobacco infraction, has been or is being committed by the person in the officer's view." King argues that because Stanturf did not arrest him at the time the officer saw King commit the misdemeanor, the officer only had probable cause to believe that King had committed the misdemeanor. Therefore, the arrest would only be proper under K.S.A. 22-2401(c)(2) if Stanturf also had probable cause to believe that "(A) [t]he person will not be apprehended or evidence of the crime

will be irretrievably lost unless the person is immediately arrested; (B) the person may cause injury to self or others or damage to property unless immediately arrested; or (C) the person has intentionally inflicted bodily harm to another person." K.S.A. 22-2401(c)(2).

The trial court's memorandum decision states:

"It is clear to this Court that the officer does have the authority to make a valid arrest. K.S.A. 22-2401, makes it clear that a police officer has probable cause for an arrest on a misdemeanor if he observes the defendant commit the misdemeanor in his presence. This is clearly the case in this situation."

The Court of Appeals concluded that the trial court erroneously incorporated the K.S.A. 22-2401(c) probable cause requirement into K.S.A. 22-2401(d). *King*, 2009 WL 2499243, at *2. But the Court of Appeals held that the trial court was right for the wrong reason in that Stanturf lawfully arrested King on June 17, 2005, for three misdemeanors he saw King commit on June 2, 2005. This conclusion follows the plain language of K.S.A. 22-2401(d), which does not place any time requirement on the time of the arrest relative to the time the officer witnesses the crime.

We agree with this reasoning. K.S.A. 22-2401(d) allows a law enforcement officer to arrest a person when a crime "has been or is being committed by the person in the officer's view." The plain language of the statute does not require that the arrest occur at any particular time.

*Authority to Arrest on Screened-in Porch*

King also argues that Stanturf violated his rights under the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights by arresting King in his home or its curtilage absent exigent circumstances. King contends that because a screened-in porch is part of the dwelling for the purposes of the burglary statute, such a porch is an extension of the home.

Recognizing that warrantless arrests in the home are generally unconstitutional, we have held that a warrantless arrest is constitutional when the defendant steps outside the home, even at the request of police officers. *State v. Riddle*, 246 Kan. 277, 281, 788 P.2d 266 (1990). In *State v. Orr*, No. 96,790, 2008 WL 940778, at

*3 (Kan. App. 2008) (unpublished opinion), the Court of Appeals extended *Riddle* to a glassed-in porch. In *Orr*, the court found that a glassed-in front porch was not a part of the house for Fourth Amendment purposes based on the following factors:

"(1) [T]he door to the porch was a storm door mostly made of glass and without a solid door behind it; (2) the porch protruded from the house and had windows completely along the two free-standing sides; (3) the furniture inside the porch— which included plastic chairs commonly used as lawn furniture—was consistent with the area being a porch; (4) the defendant testified that she does not allow smoking in her home, but that she and her roommate commonly smoke on the porch; (5) anyone sitting on the porch would be visible from mid-torso up, and anyone standing on the porch would be visible from the waist up; and (6) to the right of the inner door was a porch light fixture." *Orr*, 2008 WL 940778, at *3.

In *Orr*, the Court of Appeals reviewed the trial court's findings and concluded that the defendant had no reasonable expectation of privacy in the glassed-in porch because the area was simply an enclosed porch that was used as the entryway to the front door of the home. *Orr*, 2008 WL 940778, at *4.

The United States Supreme Court outlined four factors that must be considered to determine the extent of a home's curtilage:

"the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *United States v. Dunn*, 480 U.S. 294, 301, 107 S. Ct. 1134, 94 L. Ed. 2d 326 (1987).

The trial court considered the porch area in this case, finding that (1) the porch area was only partially screened, (2) the door to the porch area was not locked, (3) a person approaching the house would go onto the screened-in porch to knock on the door to the main part of the house, (4) people on the porch were clearly visible to anyone in the front yard, and (5) it was possible to hear, see, and talk with anyone on the porch from the front yard. The trial court described the photographs of the porch and house to make these findings. As the Court of Appeals held, the record supports these factual findings.

The trial court concluded that there was no reasonable expectation of privacy in the porch; therefore, it was appropriate for the

officer to ask King to step outside the porch and to arrest him. We agree with the analysis by the trial court and the Court of Appeals. The area in question was a semi-enclosed, screened-in front porch that allowed access to the front door. Although enclosed, it was not private, not a part of the home or its curtilage. Stanturf therefore had the authority to arrest King on the porch or to ask him to step off the porch before arresting him.

### COMPLETE DEFENSE

Before King presented his defense, the State questioned the relevance of witnesses who were not present on June 17, 2005. King's attorney ultimately made a proffer of the evidence three witnesses would provide, and the trial court excluded this evidence. King claims this exclusion violated his right to present his defense and his right to a fair trial.

"Under the state and federal Constitutions, a defendant is entitled to present his or her theory of defense. This right is subject to statutory rules and case law interpretations of the rules of evidence and procedure. A defendant's fundamental right to a fair trial is violated only when the trial court excludes relevant, admissible, and noncumulative evidence that is an integral part of the defense theory." *State v. Lawrence*, 281 Kan. 1081, Syl. ¶ 1, 135 P.3d 1211 (2006).

We review whether the trial court excluded relevant, admissible, and noncumulative evidence that was an integral part of the defendant's theory of defense. If it was error for the trial court to exclude this evidence, we must also consider whether this error was harmless. See K.S.A. 60-261.

### Standard of Review

"We have held that a defendant is entitled to present his or her defense, and a defendant's fundamental right to a fair trial is violated if evidence that is an *integral part* of that theory is excluded. [Citation omitted.] However, that right is not unlimited. '[T]he right to present a defense is subject to statutory rules and case law interpretation of the rules of evidence and procedure.' [Citation omitted.]" *State v. Houston*, 289 Kan. 252, 261, 213 P.3d 728 (2009).

In *Houston*, the court was reviewing whether evidence of the victim's prior violent acts was relevant to the defendant's state of mind as it related to his claim of self-defense. Discussing the defendant's claim that the Court of Appeals erroneously applied an

abuse of discretion standard rather than a de novo standard of review, we concluded:

"However, to establish relevance, *i.e.*, probativity, there must be some logical connection between the asserted facts and the inference or result they are intended to establish. [Citation omitted.] In *Reid*, we explained that the definition of 'relevance' as described in K.S.A. 60-401(b) (' "Relevant evidence" means evidence having any tendency in reason to prove any material fact.'), like Federal Rule of Evidence 401, contains both a probative element and a materiality element. There we held that we review trial court determinations of the probativity prong of relevance for an abuse of discretion, and determinations of materiality are reviewed de novo. [Citation omitted.] We therefore expressly reject Houston's general assertion that relevance is reviewed de novo." *Houston*, 289 Kan. at 261-62.

In *Mitchell v. Gibson*, 262 F.3d 1036 (10th Cir. 2001), the Tenth Circuit Court of Appeals provided the following test for whether excluded testimony denied a defendant their constitutional right to present their defense:

" 'In order to declare a denial of [fundamental fairness] we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial. It is the materiality of the excluded evidence to the presentation of the defense that determines whether a petitioner has been deprived of a fundamentally fair trial. Evidence is material if its suppression might have affected the trial's outcome. In other words, material evidence is that which is exculpatory—evidence that if admitted would create reasonable doubt that did not exist without the evidence.' " *Gibson*, 262 F.3d at 1054 (quoting *Richmond v. Embry*, 122 F.3d 866, 872 [10th Cir. 1997]).

*Rebecca Vernon*

King's counsel made the following proffer regarding Rebecca Vernon's testimony:

"Because of the recent case law, I'm a little leery of making proffers. But I think that I can state with confidence that Rebecca Vernon, V-e-r-n-o-n, will testify that Stanturf has made a habit of following Kameron, of parking in front of his house, of following him down the street while he's walking, just general harassment.

"And that that has occurred since the arrest in this case."

We agree with the Court of Appeals that this evidence was relevant to the bias and interest of Stanturf. As the Court of Appeals stated: "Evidence of bias, interest, or improper motives of a witness

is always relevant in order to place the witness' testimony in proper perspective. A party should have wide latitude in establishing partiality, bias, motive, or interest of a witness." *King*, 2009 WL 2499243, at *5. This evidence was specifically relevant to King's defense because it provides a reason or motive for Stanturf to plant evidence to frame King for this crime.

To the extent that Stanturf's conduct in stalking and harassing King could be viewed as a statement, the officer was available for cross-examination, eliminating any hearsay problems with this testimony. See K.S.A. 60-460(a). Although King did testify about some instances of Stanturf's stalking and harassment, Vernon could have testified about different instances. This evidence was not unduly repetitious or cumulative. Rules of evidence and procedure do not bar this testimony.

Further, this testimony was an integral part of King's defense. It is not enough that King was allowed to identify his theory of defense, *i.e.*, to tell the jury the drugs were planted by Stanturf during the arrest, without explaining why Stanturf might act with such disregard for the law and his duty as a law enforcement officer. Stanturf's motive and his alleged grudge against King were an essential part of King's defense.

Because this was relevant, admissible, and noncumulative evidence that was integral to King's defense, it was error to exclude this evidence.

*Ivan King*

King's counsel proffered the following with regard to the testimony of Ivan King:

"Ivan King would testify that on a recent occasion three members of the south patrol division came up to his house in a pickup truck, off duty, to come to his party that he was giving and ask about noise with their pistols drawn.

"That he was eventually arrested, was taken, not to the jail here, but to the south patrol office where the arresting officer shined a flashlight on his face while members of south patrol came out. And it was announced, 'This is Ivan King, he's the brother of Kameron King, you know, that POS that's given us so much trouble.' "

The Court of Appeals majority rejected King's argument that the attitude of the south patrol division was relevant to the actions

of Stanturf and the other four officers present during King's arrest on June 17, 2005. The majority found that Ivan King's testimony, even if accepted as true, was of minimal probative value and may have been more damaging to King than helpful. *King*, 2009 WL 2499243, at *6. We disagree and come to the same conclusion as Judge Leben in his well-reasoned dissent. Evidence that the south patrol division had a vendetta against King or a negative attitude toward him provides, at least by inference, a motive for Stanturf to plant drugs on King during his arrest. This evidence was relevant.

The trial court ruled this was inadmissible hearsay unless the officers involved were available for cross-examination. Again, we disagree. A statement that is not offered to prove the truth of the matter asserted is not inadmissible hearsay. *Boldridge v. State*, 289 Kan. 618, 635, 215 P.3d 585 (2009). This testimony was not offered to prove that King was a "POS that's given [the south patrol division] so much trouble," but to show that an officer with the south patrol division had made the statement. As such, this evidence was not inadmissible hearsay. Nor was this evidence cumulative.

This evidence was also an integral part of King's defense. To support his theory that Stanturf planted drugs on him, King would have to show that Stanturf had some motive to do so. The jury might question why other officers present on the night of King's arrest did not object to Stanturf's conduct. The making of a statement reflecting a pervasive antagonistic attitude toward King in the south patrol division would explain such inaction.

Because this was relevant, admissible, and noncumulative evidence that was integral to King's defense, it was error to exclude this evidence.

*Claudia King*

King's counsel proffered the following with regard to the testimony of Claudia King:

"Claudia King, I think, given the ruling that you've already made, she would just proffer that there was an incident where Kameron was accused and eventually convicted of car theft.

"The officers involved were Jeff Hamilton, who you probably have heard of or know of, and Jason Sutton. And they came into her house, said they thought they had seen Kameron driving a stolen car. They knew it was either him or Curtis Hall. They couldn't be sure.

"This was like 11:30 at night, no warrant, no nothing, just came into the house. And then went into court and testified they were sure it was Kameron King. Then Jeff Hamilton called after all was said and done, and [said], 'Sorry, we had to lie in court.' And that would be the evidence."

The trial court and Court of Appeals majority rejected this evidence because it would have informed the jury of King's prior, unrelated car theft conviction. In presenting his defense to the jury, a defendant may open the door to otherwise inadmissible evidence that is prejudicial to his case. For example, if a defendant introduces evidence solely for the purpose of supporting his or her credibility, the defendant may be cross-examined about prior convictions involving dishonesty or false statements. *State v. Johnson*, 21 Kan. App. 2d 576, 579, 907 P.2d 144, *rev. denied* 258 Kan. 861 (1995) (citing *State v. DeLespine*, 201 Kan. 348, 350, 440 P.2d 572 (1968)). Simply telling his version of events, a defendant may admit to other crimes or conduct a jury might find objectionable. The negative implications of a defendant's theory of defense are things that the defendant, with counsel, should consider when deciding how to pursue his or her defense. See *State v. Betts*, 272 Kan. 369, 387-91, 33 P.3d 575 (2001), *overruled on other grounds by State v. Davis*, 283 Kan. 569, 575, 158 P.3d 317 (2006) (trial counsel's strategic decisions on which witnesses to call to present defendant's theory of defense may not establish ineffective assistance of counsel). The potential prejudice of this evidence, when offered by King, was not enough to rule the evidence was inadmissible.

The officer's statement in Claudia King's testimony would have been offered to prove that the officer admitted to lying in court in another case in order to obtain a conviction. But an admission of perjury is a statement against interest that is admissible under K.S.A. 60-460(j). This evidence was not inadmissible hearsay.

Like the testimony of Ivan King, this evidence was relevant to show that the attitude of officers in the south patrol division would have allowed and even encouraged Stanturf to plant drugs on King.

Likewise, the evidence was integral to King's defense. And this evidence was not cumulative. Because this was relevant, admissible, and noncumulative evidence that was integral to King's defense, it was error to exclude this evidence.

*Harmless Error*

Because it was error to exclude the testimony of these three witnesses, we must consider whether that error was harmless. Our decision in *State v. Ward*, 292 Kan. 541, 556-65, 256 P.3d 801 (2011), synthesized and clarified our case law on the definition and application of the harmless error standard applied to claims of constitutional error, concluding:

"[B]efore a Kansas court can declare an error harmless it must determine the error did not affect a party's substantial rights, meaning it will not or did not affect the trial's outcome. The degree of certainty by which the court must be persuaded that the error did not affect the outcome of the trial will vary depending on whether the error implicates a right guaranteed by the United States Constitution. If it does, a Kansas court must be persuaded beyond a reasonable doubt that there was no impact on the trial's outcome, *i.e.*, there is no reasonable possibility that the error contributed to the verdict. If a right guaranteed by the United States Constitution is not implicated, a Kansas court must be persuaded that there is no reasonable probability that the error will or did affect the outcome of the trial." *Ward*, 292 Kan. at 565.

The State, as the party benefitting from the error, has the burden of proving the error was harmless.

" 'A constitutional error may be declared harmless where the [party benefitting from the error] proves beyond a reasonable doubt that the error complained of did not [affect substantial rights, meaning it did not] contribute to the verdict obtained.' *Kleypas*, 272 Kan. at 1084 (citing *Chapman*, 386 U.S. at 24)." *Ward*, 292 Kan. at 568-69.

The evidence in this case comes purely from witness testimony. Stanturf and another officer testified that the cocaine came from King's pants pocket. King and Hudnall testified that Stanturf planted the cocaine found in this case. No physical evidence linked the bag of cocaine to King and there was no video of the arrest or subsequent search. Stanturf testified that he had no strong personal feelings against King, other than some frustration from the incident on June 2, 2005, when King fled the scene. King testified that

Stanturf harassed him, pulled him over frequently, and had told King of his personal dislike of King. Stanturf testified that he knew of no ongoing vendetta between King and the officers of the south patrol division. But King was not allowed to present evidence of the south patrol division's alleged hostile attitude toward him.

The prosecutor's closing argument seized upon the absence of this evidence and ridiculed King's defense, saying:

> "It is not reasonable to believe that Officer Stanturf and the entire Kansas City, Kansas, Police Department have it in for Kameron King, that they're going to risk their jobs, and judges and cops and forensic chemists are going to corroborate him. I think you all know that Wyandotte County has more problems than that."

The prosecutor's closing argument highlights the fact that King was allowed to present the "what" of his defense—*i.e.*, the drugs had been planted, but he was not allowed to present the "why" of his defense—*i.e.*, the bias of Officer Stanturf and the south patrol division. Although King was allowed to present his defense that the drugs were planted through his own testimony and that of one other witness, the trial court denied King the opportunity to present relevant, admissible, and noncumulative evidence that was integral to his defense. Evidence that Stanturf continued to harass King after the arrest supports King's theory that Stanturf had a grudge against him that caused the officer to plant drugs to frame him for this crime. Evidence that officers in the south patrol division made disparaging comments about King to his family and perjured themselves to obtain a conviction further supports King's theory of defense.

As Judge Leben pointed out in his dissent, it may well be that a jury would give little weight to the proffered testimony, but it is not our job on appeal to determine its believability. The evidence offered was relevant, material, and not subject to any sustainable hearsay objections. The State, as the party benefitting from the error, has the burden of proving that the exclusion of this evidence was harmless. *Ward*, 292 Kan. at 568-69. The State, therefore, needed to prove "beyond a reasonable doubt that there was no impact on the trial's outcome, *i.e.*, there is no reasonable possibility that the error contributed to the verdict." *Ward*, 292 Kan. at 565.

The State failed to meet its burden in this case. The exclusion of this evidence prevented King from presenting a complete defense. There is a reasonable possibility that the exclusion of this evidence contributed to the verdict. Because this evidence was integral to King's defense theory, we are not persuaded beyond a reasonable doubt that the error did not impact the outcome of the trial, so we must reverse his convictions and remand for a new trial.

## SENTENCING

King argues that because his prior convictions were not included in the complaint or proved to a jury beyond a reasonable doubt, the use of his criminal history score in sentencing violates *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). King acknowledges that this court has previously decided this issue, but seeks to preserve it for federal review. See *State v. Ivory*, 273 Kan. 44, 46-47, 41 P.3d 781 (2002).

Judgment of the Court of Appeals affirming the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed in part, reversed in part, and remanded for a new trial.